STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**SHIRLEY JOYNER** and  
**JAMES JOYNER**

Case No.:  
HON.

     Plaintiff,

vs.

**CITY OF DETROIT BUILDINGS,  
SAFETY, ENGINEERING &  
ENVIRONMENTAL DEPARTMENT**,  
a municipal corporation, **SUPREME  
TEAM DISASTER UNIT, LLC**,  
a Michigan limited liability corporation, and  
**CHARLES HENDON**,

     Defendants.

_____/

MEGAN DAKHLALLAH (P84205)  
**DAKHLALLAH LAW, P.L.L.C.**  
Attorney for Plaintiff  
6200 Schaefer Road, Suite 202  
Dearborn, MI 48126  
(248) 800-9045  
dakhlallahlaw@gmail.com

_____/

## COMPLAINT

     There is no other civil action between the Parties arising out of the same transaction or occurrence as alleged Pending in this Court; nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge.

     Plaintiff, Shirley Joyner, now comes before this Honorable Court by and through her attorney, Megan Dakhlallah, Esq., of Dakhlallah Law, P.L.L.C., and for her Complaint against Defendants, City of Detroit Buildings, Safety, Engineering & Environmental Department ("BSEED"), Supreme Team Disaster Unit, L.L.C. ("Supreme Team") and Charles Hendon, states:

**JURISDICTION, VENUE & PARTIES**

1. Plaintiffs are lifelong Detroiters who seek declaratory relief, injunctive relief, and compensation for the City's systematic violation of rights guaranteed by the Eighth and Fourteenth Amendments to the U.S. Constitution. Plaintiff Shirley Joyner dutifully and loyally served the City of Detroit as its first African-American, female police officer, who has now faced serious distress and substantial injury as a result of blatant violations of her and her family's constitutional rights.

2. Defendant BSEED is a division of the City of Detroit municipal government that regulates the condition of buildings and their environs within the City of Detroit, County of Wayne, and State of Michigan.

3. Defendant BSEED has an official policy of unreasonably levying fines and forcing residential properties under the administrative control of the Detroit Land Bank Authority ("DBLA") that then become subject to governmental foreclosure. As a result, it is now institutionalized practice for the City of Detroit to unlawfully seize residential properties simply because owners, such as Plaintiffs Shirley and James Joyner, are driven out of their homes due to an emergency caused neither by an intentional act nor apparent negligence or as a result of the bad acts of third parties, such as contractors and subcontractors.

4. Innocent property owners find themselves ensnared in this system, facing the seizure and permanent loss of their property, even when someone else is responsible for an apparent and open and obvious danger remaining on residential properties that have been subject to casualty.

5. Defendant Supreme Team is a business that conducts business in the City of Detroit, County of Wayne, and State of Michigan.

6. This all happened to Shirely, James, and their children all of whom have faced displacement and have become subject to unreasonable fines and seizure of their forever home. They found themselves caught up in the City's unconstitutional forfeiture practices, which lead, inevitably, to innocent people losing their property, being injured financially, and being denied bedrock constitutional rights in the process.

7. Plaintiffs bring this action under Section 1 of the Fourteenth Amendment to the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988; the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202; and this Court's equitable powers under 28 U.S.C. § 1331; and Rule 64 of the Federal Rules of Civil Procedure.

8. Venue is proper in this Court pursuant to 28 USC § 1391 as the Defendant's are subject to this Court's jurisdiction and the Property is situated within the Eastern District of Michigan, being located in the City of Detroit, County of Wayne, and State of Michigan.

## GENERAL ALLEGATIONS

9. Plaintiff incorporates by reference each and every preceding paragraph contained in this Complaint as if fully set forth herein.

10. The property commonly known as 505 East Boston Boulevard located in the City of Detroit, the County of Wayne, and the State of Michigan ("the Property") is the subject of this dispute.

11. In or around February 2017, James Joyner moved away from his family and forever home, the Property, to work in Texas in order to avoid being laid off; Mr. Joyner intended to retire shortly after.

12. In or around June 2017, the Joyners experience the tragic loss of a brother and child, lessening their family's ability to support themselves and increasing their financial difficulty in the face of mounting obligations.

13. In or around September 2017, Mr. Joyner returns home for a short period of time to visit his family, and he suffers a seizure before returning to work in Texas.

14. As a result of Mr. Joyner's medical condition, his daughter Kyra; who is of working age and currently employed in Michigan at the time of filing this suit; went to stay with him in Texas to care for him until June 2018.

15. In or around April 2018, the Property caught fire destroying the roof of its house, much of the exterior, and parts of the interior among other structural and surface damage.

16. Following the fire, Plaintiff Shirely Joyner, one of her daughters, four of her great-grandchildren, and her nephew were displaced to the Hotel St. Regis, located in the City of Detroit.

17. Plaintiff and her kin stayed at the Hotel St. Regis until in or around June 2018 at which time she had secured a townhouse located at 9853 Brush Street in the City of Detroit, renting at $600.00 per month.

18. The townhouse located at 9853 Brush Street had multiple issues at the time of move-in affecting the Plaintiff Shirley Joyner and her family's quality of life.

19. Despite Plaintiff James Joyner's health issues, in or around June 2018, Kyra Joyner moves back to Michigan to assist her family with their displacement issues and the mounting issues at the subject Property.

20. Sometime following the fire, Defendant BSEED or its agent(s) charged Plaintiffs with fines as a result of the condition of their Property and informed Plaintiffs it was necessary to register their Property as vacant; Plaintiffs subsequently did so to avoid further financial penalties as assessed by BSEED.

21. Plaintiffs were coerced with the threat of further financial penalties or demolition by Defendant BSEED despite their intention and good faith efforts to repair the subject Property to a state in which they were able to re-occupy it.

22. In or around April 2018, Plaintiffs hired Supreme Team and Charles Hendon, its proprietor, to rehabilitate the Property.

23. In or around May 2018, Plaintiffs hired Sketch Design Group, L.L.C. to provide an architectural design layout for the Property in compliance with the "Historical District & City of Detroit Buildings & Safety Inspections thru to final approval & permits"; Plaintiffs remitted $4,000.00 to their firm for such plans.

24. On September 27, 2018, Plaintiffs paid Supreme Team $15,445.00.

25. On March 12, 2019, Plaintiffs received a notice from the Detroit Land Bank Authority that the Property had become subject to seizure.

26. On June 12, 2019, Plaintiffs paid Supreme Team $40,000.00 to complete work on the Property.

27. Plaintiffs and Defendant Supreme Team were of the mutual understanding that the payments made to Supreme Team were for rehabilitation according to the plan submitted by Sketch Design Group, L.L.C.

28. Supreme Team subsequently failed to perform the remaining contracted work on the Property subject to Sketch Design Group, L.L.C.'s plan.

29. In or around January 2019, Plaintiff Shirley Joyner's daughter moved out with Plaintiff's four great-grandchildren as a result of the difficulties in continuing to reside at the townhouse located at 9853 Brush Street.

30. In or around June 2019, the ownership of the townhouse located at 9853 Brush Street changed, resulting in the rent increasing to $900.00, as well as the habitability issues to continue to worsen.

31. In or around the summer of 2019, Defendants Charles Hendon and Supreme Team did undertake work to "clear out" so to speak the Property.

32. Defendant Charles Hendon hired what he referred to as a "demolition crew" but what may have been no more than neighborhood acquaintances.

33. Defendant Charles Hendon and his aforementioned subcontractors did no more than throw away the majority of Plaintiffs' personal property without permission.

34. Defendants Charles Hendon and Supreme Team did minimal work on the interior of the Property, such as tearing down a burnt staircase.

35. Defendants Charles Hendon and Supreme Team left storage boxes at the subject Property that the Plaintiffs moved themselves into storage in or around summer 2021.

36. Following the violative work done by Defendants Charles Hendon and Supreme Team in the summer of 2019, he ceased any work on the subject Property, resulting in its increased exposure to the elements and the surrounding neighborhood.

37. In the summer of 2021, Plaintiffs secured quotes from alternate contractors; at this point no contractor would do minimal compliance work on the roof, quoting anywhere from approximately $700,000.00 to $1,000,000.00 for a full rehabilitation.

38. With increased damages to the subject Property, resulting from the acts of Defendants Charles Hendon and Supreme Team, and with monies originally compensated by insurance for work on the Property as originally contracted for as well as for the costs associated with displacement, Plaintiffs were unable to afford to hire another contractor.

39. In or around January and February 2022, BSEED sent repeated correction orders.

40. Plaintiffs received the correction orders approximately a month after BSEED stated having sent them, resulting in Plaintiffs having days to correct an alleged violation in the absence of full and fair due process of law, while facing the threat of demolition.

41. BSEED agent Alvin Nunn informed Plaintiffs they would continue to get violations and increased fines repeatedly unless they registered their home as vacant.

42. On March 29, 2022, Plaintiffs received a notice to abate nuisance from the Detroit Land Bank Authority despite their good faith efforts to effectively deal with the damages resulting from the fire at the subject Property and reluctance to register the Property as vacant.

43. DBLA sends Plaintiff notice that they have three days to comply or they will take title to the Property.

44. In or around February or March 2022, Plaintiffs make final mortgage payments on the home and own the Property outright.

45. Plaintiffs promptly informed the DBLA and City of Detroit Councilperson, Mary Sheffield, of their efforts at compliance and the bad faith dealings involving BSEED, the DBLA, and Defendant Supreme Team.

46. Plaintiff Shirley Joyner subsequently spoke to Leor Barak, the Compliance Manager at the Detroit Land Bank Authority, who informed her that she would have to sign a compliance agreement with the DBLA; otherwise, the Property would be subject to seizure.

47. Plaintiffs were initially coerced by Defendant BSEED to register the Property as vacant, at which point authority was illegally vested in the DLBA *whose agent then attempted to further coerce*[1] Plaintiff Shirley Joyner to sign a compliance agreement at the threat of the complete demolition of her home that she earnestly paid a contractor to rehabilitate according to the appropriate guidelines as defined by the Detroit Historic District Commission's rehabilitation standards.

## COUNT I - BREACH OF CONTRACT AS
## AGAINST DEFENDANTS CHARLES HENDON AND SUPREME TEAM

48. Plaintiffs incorporate by reference each and every preceding paragraph contained in this Complaint as if fully set forth herein.

49. In or around April 2018, Plaintiffs contracted with Defendants Charles Hendon and Supreme Team to rehabilitate the Property.

50. Save the illegal conversion of Plaintiffs' personal property and minor other alterations, Defendants did not perform the work under contract.

51. Defendants failed to respond to multiple requests to resume the work on the Property from Plaintiffs and Plaintiffs' family.

52. Plaintiffs paid Defendants in full for the work as pre-specified.

53. Defendants' failure to perform timely (or at all) the pre-specified services has resulted in the continued damage and deterioration of Plaintiffs' Property as well as the loss of the financial compensation afforded Defendants for the pre-specified work.

54. Plaintiffs fully performed under the contract.

55. Defendants' failure to perform at all or in a reasonable time constitutes a material breach.

56. As a direct and proximate result of Defendants' breach of contract, Plaintiffs have been damaged in an amount in excess of $75,000.

---

[1] Emphasis added.

### COUNT II - STATUTORY CONVERSION UNDER MCL 600.2919a AS AGAINST DEFENDANTS CHARLES HENDON AND SUPREME TEAM

57. Plaintiffs incorporate by reference each and every preceding paragraph contained in this Complaint as if fully set forth herein.

58. Defendants Charles Hendon and Supreme Team instructed subcontractors to dispose of Plaintiffs' personal property located at the subject Property.

59. Therefore, Defendants agents while working under the scope of work for which they were hired by Defendants and having acted with the authority of the Defendants caused the stealing and conversion of Plaintiffs' personal property.

60. Defendants' actions and misappropriation of Plaintiffs' property constitutes a conversion in violation of MCLA 600.2919a in that the property disposed of constitutes converted property and such property being converted is subject to treble damages against its fair market value, together with reasonable attorney fees and costs as provided by statute.

### COUNT III - COMMON LAW CONVERSION AS AGAINST DEFENDANTS CHARLES HENDON AND SUPREME TEAM

61. Plaintiffs incorporate by reference each and every preceding paragraph contained in this Complaint as if fully set forth herein.

62. Plaintiffs restate the facts as contained in Paragraphs 58, 59, & 60.

63. Defendants having hired and instructed its agents to dispose of Plaintiffs' personal property contained within the subject Property caused acts of dominion and control wrongfully exerted over the Plaintiffs' property such that it was in denial of and inconsistent with their rights over said personal property.

### COUNT IV - UNJUST ENRICHMENT AS AGAINST DEFENDANTS CHARLES HENDON AND SUPREME TEAM

64. Plaintiffs incorporate by reference each and every preceding paragraph contained in this Complaint as if fully set forth herein.

65. Defendants received the benefit of Plaintiffs' payments.

66. Plaintiffs were deprived of the timely, productive use of the subject Property.

67. The circumstances would make it unjust for the Defendants to retain the monies without commensurate compensation to the Plaintiffs.

68. The acts above constitute unjust enrichment, and Plaintiffs are entitled to damages in excess of $75,000.

## COUNT V - VIOLATION OF THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION AS AGAINST DEFENDANT BSEED

69. Plaintiffs incorporate by reference each and every preceding paragraph contained in this Complaint as if fully set forth herein.

70. Defendant BSEED imposed a fine within the meaning of the Eighth Amendment to the Constitution when it issued blight violations to Plaintiffs.

71. The Detroit City Code's Property Maintenance Code and blight procedures result in strict liability regulatory infractions with associated fines.

72. Defendant BSEED imposed punitive quasi-criminal fines associated with blight at the subject property that was not due to the fault of the Plaintiff.

73. By BSEED's agent's own admission, Plaintiffs only choice was to register their Property as vacant in order to avoid excessive fines while they attempted to comply with City and State standards for rehabilitation and repair of their Property, while dealing with a breach of contract by no fault of their own.

74. The excessive fines from Defendant BSEED resulted in the extreme fear and apprehension of Plaintiffs in face of mounting penalties.

75. Defendant BSEED's policies and procedures coupled with their express acts related to the Property violated the Plaintiffs' Eighth Amendment rights entitling them to damages.

## COUNT VI - VIOLATION OF THE SIXTEENTH AMENDMENT OF THE MICHIGAN CONSTITUTION AS AGAINST DEFENDANT BSEED

76. Plaintiffs incorporate by reference each and every preceding paragraph contained in this Complaint as if fully set forth herein.

9

77. Plaintiffs restate the foregoing facts as contained in Paragraphs 70, 71, 72, 73, & 74.

78. Defendant BSEED imposed excessive fines in the form of quasi-criminal blight violations and correction orders as assessed against Plaintiffs in violation of the Eighth Amendment of the Michigan Constitution.

79. Defendant BSEED's policies and procedures coupled with their express acts related to the Property violated the Plaintiffs' Sixteenth Amendment rights entitling them to damages.

### COUNT VII - VIOLATION OF THE FIFTH AMENDMENT
### OF THE UNITED STATES CONSTITUTION AS AGAINST DEFENDANT BSEED

80. Plaintiffs incorporate by reference each and every preceding paragraph contained in this Complaint as if fully set forth herein.

81. Plaintiffs rely on the aforementioned facts as stated in Paragraphs 70, 71, 72, 73, & 74.

82. Plaintiffs lost valuable use of their Property as a result of Defendant BSEED having coerced Plaintiffs into registering their Property as vacant.

83. Plaintiffs had the expectation to enjoy retirement in their home or at least to be able to make valuable use of their Property following a timely rehabilitation with minimal involvement by Defendant BSEED where Plaintiffs are actively making efforts to comply with their policies and procedures.

84. The action by Defendant BSEED, in this case, resulted in the subject Property becoming registered as vacant and needlessly subject to the jurisdiction of the DBLA and Mr. Barak's threat to initiate a suit to vest title of the subject Property in the DBLA.

85. Defendant BSEED's policies and procedures coupled with their express acts related to the Property violated the Plaintiffs' Fifth Amendment rights entitling them to damages.

### COUNT VIII - VIOLATION OF THE FOURTEENTH AMENDMENT
### OF THE UNITED STATES CONSTITUTION AS AGAINST DEFENDANT BSEED

86. Plaintiffs incorporate by reference each and every preceding paragraph contained in this Complaint as if fully set forth herein.

87. Defendant BSEED violated Plaintiffs' procedural due process when it coerced them to register their Property as vacant.

88. Defendant BSEED's compliance process at it relates to the subject Property in this case constitutes a governmental, administrative process, wherein the alleged offender is entitled to due process of law.

89. Defendant BSEED failed to give Plaintiffs' fair notice or a hearing in front of a neutral hearing officer while it continued to issue blight violations and enforce correction orders.

90. Defendant BSEED deprived Plaintiffs of procedural due process in threatening the accumulation of blight violation fines in the absence of a hearing while coercing Plaintiffs to register their Property as vacant.

91. DLBA subsequently engaged in proactive efforts to deprive Plaintiffs of their Property.

92. Defendant BSEED's policies and procedures coupled with their express acts related to the Property violated the Plaintiffs' Fourteenth Amendment rights entitling them to damages.

### COUNT IX - VIOLATION OF THE SEVENTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AS AGAINST DEFENDANT BSEED

93. Plaintiffs incorporate by reference each and every preceding paragraph contained in this Complaint as if fully set forth herein.

94. Plaintiffs restate the foregoing facts as contained in Paragraphs 87, 88, 89, 90, & 91.

95. Defendant BSEED's policies and procedures coupled with their express acts related to the Property violated the Plaintiffs' Fourteenth Amendment rights entitling them to damages.

96. Defendant BSEED's policies and procedures coupled with their express acts related to the Property violated the Plaintiffs' Seventeenth Amendment rights entitling them to damages.

### COUNT X - BAD FAITH AS AGAINST DEFENDANT BSEED

97. Plaintiffs incorporate by reference each and every preceding paragraph contained in this Complaint as if fully set forth herein.

98. Defendant BSEED acted in bad faith when it informed Plaintiffs that they were better served to register their Property as vacant.

99. In the absence of evident intention, BSEED agent Alvin Nunn or those otherwise in contact with Plaintiffs acted recklessly in informing them to register their Property as vacant instead of engaging in compliance proceedings.

100. Defendant engaged in the dishonest belief and purpose of instructing Plaintiffs to register their Property as vacant without providing proper instructions or process for compliance.

101. Defendant engaged in the untrustworthy performance of its duties.

102. Defendant neglected fair dealing standards.

103. Defendant BSEED engaged in bad faith in its dealings with Plaintiffs, entitling them to damages.

### COUNT V - LEGAL COERCION AS AGAINST DEFENDANT BSEED

104. Plaintiffs incorporate by reference each and every preceding paragraph contained in this Complaint as if fully set forth herein.

105. Defendant BSEED exerted improper influence in threatening increased fines in the absence of Plaintiffs registering their Property as vacant.

106. Defendant BSEED threatened harm in the form of excessive fines.

107. Defendant BSEED exerted improper influence in creating a situation where the DBLA threatened to initiate legal action to take title to Plaintiffs' Property where they did not sign a rehabilitation agreement under the DBLA's terms.

108. Defendant BSEED threatened Plaintiffs' Property in order to improperly influence the Plaintiffs to register their Property as vacant.

109. Defendant BSEED engaged in legal coercion in its dealings with Plaintiffs, entitling them to damages.

Plaintiffs respectfully request this Honorable Court reverse the fines imposed by Defendant BSEED; enjoin Defendant BSEED and the DLBA from taking action as against Plaintiffs' Property without affording them proper procedural due process and a realistic timeline for rehabilitation in accord with the damages accrued; and award them all damages to which they are entitled, including but not limited to actual, consequential, incidental, and punitive damages.

Respectfully submitted,

*/s/ Megan Dakhlallah*
MEGAN A. DAKHLALLAH (P84205)
Attorney for Plaintiffs
6200 Schaefer Rd., Ste. 202
Dearborn, MI 48126
(248) 800-9045

Dated: 3/27/2023